John P. Kristensen (SBN 224132)
Justice D. Turner (SBN 336579)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
8827 W. Olympic Blvd
Telephone: 310-273-1230
*kristensen@cz.law*
*jturner@cz.law*
*kristensenteam@cz.law*
**Attorneys for Plaintiffs**

# THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ANDREA KEPLER, and MELISSA GONZALEZ, an individual, and individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> PRISMA ENTERTAINMENT, LLC, dba PLAN B GENTLEMEN'S CLUB, a California Corporation; FRANK GRUNDEL, an individual; DOE MANAGERS 1- 3; and DOES 4-10, inclusive, <br><br> Defendants. | Case No. <br><br> **COLLECTIVE ACTION** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. **Failure to Pay Minimum Wage, 29 U.S.C. § 206;** <br> 2. **Unlawful Taking of Tips, 29 U.S.C. § 203;** <br> 3. **Illegal Kickbacks, 29 C.F.R. § 531.35;** <br> 4. **Forced Tip Sharing, 29 C.F.R. § 531.35;** <br> 5. **Failure to Pay Minimum Wage in Violation of Cal. *Lab. Code* §§ 1194 & 1197;** <br> 6. **Failure to Furnish Accurate Wage Statements, Cal. *Lab. Code* § 226;** <br> 7. **Waiting Time Penalties, Cal. *Lab. Code* §§ 201-203;** <br> 8. **Failure to Indemnify Business Expenses in Violation of Cal. *Lab. Code* § 2802;** |

) 9. **Compelled Patronization of**
)    **Employer and/or Other Persons in**
)    **Violation of Cal.** *Lab. Code* **§ 450;**
) 10. **Violation of Cal.** *Lab. Code* **§§ 350,** *et*
)     *seq.***; and**
) 11. **Unfair Competition in Violation of**
)     **Cal.** *Bus. & Prof. Code* **§§ 17200,** *et*
)     *seq.*
)
) **DEMAND FOR JURY TRIAL**
)
)

Plaintiffs Andrea Kepler ("Kepler") and Melissa Gonzalez ("Gonzalez") (collectively "Plaintiffs") allege the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

## I.  NATURE OF THE ACTION

1.  Plaintiffs allege causes of action against defendants Prisma Entertainment, LLC. dba Plan B Gentlemen's Club ("Defendant" or "Plan B"), a California Corporation, Frank Grundel, Doe Managers 1-3, and Does 4-10, inclusive (collectively, "Defendants") for damages due to Defendants evading the mandatory minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and illegally absconding with Plaintiffs' tips.

2.  As a result of Defendants' violations, Plaintiffs seek to recover all tips kept by their employer, liquidated damages, interest, and attorneys' fees and costs pursuant to the FLSA.

3.  These causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants within the last three years from the filing of the demand for arbitration. During their time being employed by Defendants, Plaintiffs were denied minimum wage payments and denied overtime as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors."

4.     Plaintiffs worked at Defendants' principal places of business located at 11637 W Pico Boulevard, Los Angeles, California 90064 in the past three years.

5.     Defendants failed to pay Plaintiffs their minimum wages and overtime wages for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the FLSA.

6.     Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for her overtime work at a rate of one and one-half (1 ½) times her regular rate of pay. *See* 29 U.S.C. § 207(a).

7.     Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

8.     As a result of Defendants' violations, Plaintiffs seek to recover double damages for failure to pay minimum wage, overtime liquidated damages, interest, and attorneys' fees.

## II.   VENUE AND JURISDICTION

9.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq*. Plaintiffs' state law claims for relief are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiffs worked in this District.

11.     Plaintiffs have satisfied all conditions precedent, if any, to the filing of this suit.

## III.   PARTIES

12.     Plaintiffs were employed by Defendants and Plaintiffs qualify as "employees" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1).

1   Plaintiffs worked at Plan B in the last three years. Their consent to join are being

2   filed concurrently with this Complaint.

3         13.    Plan B is a California corporation with its principal place of business

4   located at 11637 W Pico Boulevard, Los Angeles, California 90064. At all times

5   mentioned herein, Plan B was an "employer" or "joint employer" of Plaintiffs as

6   defined by the FLSA, 29 U.S.C. § 203(d) and (g). Plan B may be served via its

7   agent for service of process Frank Grundel, 2336 Pontius Avenue, Los Angeles,

8   California 90064. An alternative agent of process is Eresidentagent, Inc., located

9   at 7801 Folsom Boulevard, Suite 202, Sacramento, California 95826. Other

10  California Registered Corporate Agent Authorized Employees include: (a) Katie

11  Goldin, located at 12121 Wilshire Boulevard, Suite 1120, Los Angeles,

12  California; (b) Laura Urbano, located at 12121 Wilshire Boulevard, Los Angeles,

13  California; (c) Lisa Chin, located at 12121 Wilshire Boulevard, Los Angeles,

14  California; (d) Sarah Bates, located at 12121 Wilshire Boulevard, Los Angeles

15  California; and (e) Steve Donell, located at 12121 Wilshire Boulevard, Los

16  Angeles, California.

17        14.    Defendant Frank Grundel is an individual who resides in the

18  Topanga section of Los Angeles County, California. He is the owner, controlling

19  shareholder, and exerts day to day management over the defendant entity Plan B

20  through which he exerts operational and management control over Plan B.

21  Pursuant to an across the board, corporate wide policy dictated and enforced by

22  Defendants, including Defendant Frank Grundel, as well as the other Defendants

23  herein, refuse to pay dancers-entertainers minimum wage and earned overtime,

24  by mischaracterizing them as "independent contractors." Frank Grundel,

25  individually also exerts day-to-day management and operational control over

26  Plan B, and is frequently present at, and owns, directs, controls and manages the

27  operations at the club. Defendant Frank Grundel is an "employer" or "joint

28  employer" within the meaning of the Fair Labor Standards Act.

**CZ | CARPENTER & ZUCKERMAN**

15.     DOE MANAGERS 1 to 3 are managers/owners who control the policies and enforce the policies related to employment at Plan B.

16.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at her club engaged in commerce her club which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

17.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

18.     At all material times during the three (3) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at Plan B as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

19.     The true names, capacities or involvement, whether individual, corporate, governmental or associate, of the Defendants named herein as DOE MANAGERS 1 through 3 and DOES 4 through 10, inclusive are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs pray for leave to amend this Complaint to show the true names and capacities when the same have been finally determined. Plaintiffs are informed and believe, and upon such information and belief allege thereon, that each of the Defendants designated herein as DOE is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiffs, as is hereinafter alleged.

20.     Plaintiffs are informed and believe that, at all relevant times herein,

Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

21.     Plaintiffs are informed and believe that, and on that basis alleges that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employer and/or joint employers of Plaintiffs in that each of them exercised control over their wage payments and control over their duties.

22.     Plaintiffs are informed and believe that, and on that basis allege that, at all relevant times, each and every Defendant, including those to be identified at a later time once their identities are known to Plaintiffs, have been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

23.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

## IV.   ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### (Against All Defendants)

### A.   FACTUAL ALLEGATIONS

24.     Defendants operate an adult-oriented entertainment facility located at 11637 W Pico Boulevard, Los Angeles, California 90064. At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)" of Plaintiff.

25.     At most, if not all times during the four (4) years prior to the filing

1    of the instant action, Defendants categorized all dancers/entertainers employed

2    by Defendants as "independent contractors" and have failed and refused to pay

3    wages to such dancers.

4         26.    At all times relevant to this action, Defendants exercised a great deal

5    of operational and management control over the subject club, particularly in the

6    areas of terms and conditions of employment applicable to dancers and

7    entertainers.

8         27.    Plaintiffs worked as dancers for Defendants during the past three

9    years.

10        28.    The primary duty of a dancer/entertainer is to dance and entertain

11   customers, and give them a good experience. Specifically, a dancer/ entertainer

12   perform stage and table dances, and entertain customers on an hourly basis.

13        29.    Stated differently, dancers/entertainers dance on stage, perform table

14   dances, and entertain customers in VIP rooms, all while nude or semi-nude.

15        30.    Plaintiffs worked and performed at the adult-oriented entertainment

16   facilities multiple shifts per week. Plaintiffs were an integral part of Defendants'

17   business which operated solely as an adult-oriented entertainment facility

18   featuring nude or semi-nude female dancers/ entertainers.

19        31.    Defendants did not pay dancers/ entertainers on an hourly basis.

20        32.    Defendants exercised significant control over Plaintiffs during their

21   shifts and would demand that Plaintiffs work certain days and tell Plaintiffs what

22   time they were permitted to leave.

23        33.    Defendants set prices for all VIP performances.

24        34.    Defendants set the daily cover charge for customers to enter the

25   facility and had complete control over which customers were allowed in the

26   facility.

27        35.    Defendants controlled the music for Plaintiffs' performances.

28        36.    Defendants controlled the means and manner in which Plaintiffs

could perform.

37.    Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with her rules regarding dancing.

38.    Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing.

39.    Although Defendants allowed dancers/entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises.

40.    Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at their establishments.

41.    Defendants also required Plaintiffs to share their tips with Defendants and other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the bouncers.

42.    Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' exotic dancers/entertainers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of their tips and instead required that they divide their tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

43.    Defendants exercised significant control over Plaintiffs through written and unwritten policies and procedures.

44.    Plan B provided and paid for all advertising and marketing efforts undertaken on behalf of Plan B.

45.    Plan B paid for the buildings used by Plan B, maintenance of the facility, the sound system, stages, lights, beverage and inventory used at the facility.

46.    Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

47.    Plan B's opportunity for profit and loss far exceeded Plaintiffs' opportunity for profit and loss from work at Plan B.

48.    Exotic dancing is an integral part of Plan B's operations. Plan B's advertising prominently displays exotic dancing for its customers. Plan B is well-known as a "strip club."

49.    Defendants need dancers/ entertainers to successfully and profitably operate Plan B's business model.

50.    The position of dancer/entertainer requires no managerial skill of others.

51.    The position of dancer/entertainer requires little other skill or education, formal or otherwise.

52.    The only requirements to become an entertainer at Plan B are "physical attributes" and the ability to dance seductively. Plaintiffs did not have a formal interview but instead were glanced over "up and down" and participated in a brief audition by the manager before being offered an employment opportunity. The amount of skill required is more akin to an employment position than that of a typical independent contractor. Defendants do not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to employment. Defendants do not require the submission of an application or a resume as part of the hiring process. In fact, Plaintiffs have little or no formal dance training and experience before auditioning to dance at Plan B.

53.    Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by dancers/entertainers.

54.    Plaintiffs were not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during an eight-plus (8+) hour work shift.

55.    Plaintiffs were not paid overtime wages at one-and-a-half (1½) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facility and required to work and entertain its customers for longer than eight (8) hours per shift.

56.    Plaintiffs were not paid an hourly minimum wage for the typical half (1/2) hour of time expended prior to each shift to get ready for work, including applying makeup and hair, and to comply with Defendants' dress and appearance standards.

57.    Plaintiffs were not paid an hourly minimum wage for the time they were required to wait at Plan B until the premises and the parking lot were cleared of customers.

58.    The FLSA Collective Members had the same pay structure and were under the same controls as Plaintiff.

59.    Plaintiffs and FLSA Collective Members would work over forty (40) hours in some weeks each worked for Defendants.

60.    Defendants have never paid Plaintiffs and FLSA Collective Members any amount as wages whatsoever, and have instead unlawfully required Plaintiffs and FLSA Collective Members to pay them for the privilege of working.

61.    The only source of monies received by Plaintiffs (and the collective they seek to represent) relative to their employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiffs and the FLSA Collective Members were required to pay to Defendants.

62.     Although Plaintiffs and FLSA Collective Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half (1½) rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

63.     Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the sole intent to avoid paying them in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

64.     Plaintiffs and the FLSA Collective Members who worked at Plan B performed precisely the same job duties—dancing and entertaining at Plan B.

65.     Plaintiffs and the FLSA Collective Members who worked at Plan B during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

66.     Plaintiffs and the FLSA Collective Members at Plan B were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

67.     Plaintiffs and the FLSA Collective Members at Plan B during the applicable limitations period(s) were subject to the same across-the-board, uniformly applied corporate policy mandated by Defendants.

68.     Plaintiffs and the FLSA Collective Members at Plan B, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

69.     As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainty that numerous other current and former dancers and entertainers who worked at Plan B during the applicable limitations period would elect to participate in this action if provided notice of same.

70.     Upon information and belief, more than one hundred (100) dancers and entertainers have worked at Plan B during the three (3) to five (5) years prior to the filing of this action.

71.     Plaintiffs are "similarly situated" to the 29 U.S.C. § 216(b) class of persons they seek to represent, and will adequately represent the interests of the class.

72.     Plaintiffs have hired counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the collective.

73.     Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiffs or any other dancer/entertainer and failed to maintain and furnish wage statements to Plaintiffs.

74.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

    a.     The time of day and day of week on which the employees' work week begins;

    b.     The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

    c.     An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

    d.     The amount and nature of each payment which, pursuant to

section 7(e) of the FLSA, is excluded from the "regular rate";

e.  The hours worked each workday and total hours worked each workweek;

f.  The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.  The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.  The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.  The dates, amounts, and nature of the items which make up the total additions and deductions;

j.  The total wages paid each pay period; and

k.  The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

75.  Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Collective Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the FLSA Collective Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that they intend to rely on *Anderson* to provide the extent of their unpaid work.

**B.  INDIVIDUAL LIABILITY UNDER THE FAIR LABOR STANDARDS ACT**

76.  In *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009), the U.S. Court of Appeals for the Ninth Circuit held that individuals can be liable for FLSA

violations under an expansive interpretation of "employer." *Id.* at 1088. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit stated that the definition of "employer" under FLSA is not limited by the common law concept of "employer" but "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."

77.    Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA, and is subject to liability. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999). The Ninth Circuit highlighted factors related to "economic control," which included ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees, determine salaries, and the responsibility to maintain employment records.

78.    Frank Grundel is individually liable for failing to pay Plaintiffs their wages.

79.    DOE MANAGERS 1 to 3 and DOES 4 through 10 are individually liable for failing to pay Plaintiffs their wages. The actual identities of DOE MANAGERS 1 to 3 and DOES 4 through 10 are unknown at this time.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**FAILURE TO PAY MINIMUM WAGE PURSUANT TO THE FLSA, 29 U.S.C. § 206**
**(By Plaintiffs Individually and for the Collective Against All Defendants)**

80.    Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-79 as though fully set forth herein.

81.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

82.    Defendants operate an enterprise engaged in commerce within the

meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

83. Defendants failed to pay Plaintiffs their minimum wage in violation of 29 U.S.C. § 206.

84. Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs their minimum wage under the FLSA.

85. Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after they learned that their misclassification scheme and compensation policies were illegal.

86. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203
### (By Plaintiffs Individually and for the Collective Against All Defendants)

87. Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-79 as though fully set forth herein.

88. Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and are therefore tipped employees as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

89. At all relevant times, each Defendants are an "employer" or joint employers of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

90. Defendants are engaged in "commerce" and/or in the production of

"goods" for "commerce" as those terms are defined in the FLSA.

91.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

92.    Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

93.    Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and floor men in violation of TIPA.

94.    Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the tips (such as the Club DJs, security, and management).

95.    The contribution the Defendants required Plaintiffs to make after each shift was arbitrary and capricious and the distribution was not agreed to by Plaintiffs or other dancers; but rather, was imposed upon Plaintiffs and other dancers.

96.    By requiring Plaintiffs to pool tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

97.    Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

98.    At the time of their illegal conduct, Defendants knew or showed

reckless disregard that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiffs the proper amount of the tips to which they were entitled.

99.  Defendants' willful failure and refusal to pay Plaintiffs the tips they earned violates the FLSA.

100.  Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and door men in violation of TIPA.

101.  As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest; as liquidated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

### THIRD CAUSE OF ACTION

#### ILLEGAL KICKBACKS, 29 C.F.R. § 531.35

**(By Plaintiffs Individually and for the Collective Against All Defendants)**

102.  Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-79 as though fully set forth herein.

103.  Defendants required Plaintiffs to pay monetary fees to Defendants and other Plan B employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

104.  Defendants' requirement that Plaintiffs pay fees to Defendants and other Plan B employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

105.  Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

106.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35, all monetary fees imposed on Plaintiffs are classified as illegal kickbacks.

107.   Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay in order to work at Plan B, involving but not limited to house fees.

## FOURTH CAUSE OF ACTION

### FORCED TIPPING, 29 C.F.R. § 531.35

**(By Plaintiffs Individually and for the Collective Against All Defendants)**

108.   Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-79 as though fully set forth herein.

109.   Defendants required Plaintiffs to pay monetary fees to other Plan B employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

110.   Defendants' requirement that Plaintiffs pay fees to other Plan B employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

111.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

112.   Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay other employees in order to work at Plan B, involving but not limited to forced tip sharing.

## FIFTH CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGE UNDER CAL. LAB. CODE §§ 1194 & 1197

**(Against All Defendants)**

113.   Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-79 as though fully set forth herein.

114.   Plaintiffs allege, on the basis of information and belief, that

Defendants, from the time the applicable statute of limitations begins to the present time, have engaged in the regular practice of requiring or permitting Plaintiffs to work without paying them the legal minimum wage at all times.

115.   Section 2(K) of IWC Wage Order 5 and section 5(H) of IWC Wage Order 10 define "hours worked" as "the time during which an employee is subject to the control of the employer, [which] includes all the time the employee is suffered or permitted to work, whether or not required to do so." An employer must pay its employees for all "hours worked."

116.   Defendants did not pay wages for *any* of the time that they controlled Plaintiff and/or permitted them to work.

117.   Plaintiffs are not exempt from the minimum wage requirements under California law.

118.   Defendants failed to accurately pay Plaintiffs their required legal minimum wage and compensation for all hours worked, in violation of Cal. *Lab. Code* §§ 204, 210, 216, 558, 1194, 1194.12, 1197 and applicable IWC Wage Order(s).

119.   Defendants, and each of them, individually or by and through their respective officers, directors and managing agents, ordered, authorized, approved or ratified the conduct herein alleged with the intent to deprive Plaintiffs of compensation and benefits to which they are, and were, entitled under California law, so as to increase Defendants' profits at the expense of the health and welfare of their employees, contrary to public policy and clear statutory obligations.

120.   As a result of the actions of Defendants in failing and refusing to pay the minimum wages required by law, Plaintiffs were damaged by not receiving compensation which they should have received, but did not receive. Plaintiffs are therefore entitled to compensation in an amount to be proven for unpaid wages, pre-judgment interest, penalties, attorneys' fees and costs pursuant to Cal. *Lab. Code* § 1194 and other applicable statutes.

# SIXTH CAUSE OF ACTION

## FAILURE TO FURNISH ACCURATE WAGE STATEMENTS,

## CAL. *LAB. CODE* §§ 226, *ET. SEQ.*

## (Against All Defendants)

121.   Plaintiffs hereby incorporate by reference and re-alleges paragraphs 1-79 as though fully set forth herein.

122.   Cal. *Lab Code* § 226(a) mandates that "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or their employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an **accurate** itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment."

(Emphasis added.)

123.   Pursuant to Cal. *Lab. Code* § 226(e)(2)(B), "an employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items" identified above.

124.   As alleged in Plaintiffs' causes of action, Defendants, and each of them, regularly failed to compensate Plaintiffs for all of their overtime hours worked, as well as for their missed meal and rest breaks.

125.   Furthermore, Defendants did not regularly furnished wage statements that identified the inclusive dates for that wage statement, in violation of Cal. *Lab. Code* §§ 226, *et seq.*

126.   Pursuant to Cal. *Lab. Code* § 226, Plaintiffs seek damages, costs of suit, and reasonable attorneys' fees in an amount to be proven.

## SEVENTH CAUSE OF ACTION

### WAITING TIME PENALTIES, CAL. *LAB. CODE* §§ 201-203

### (Against All Defendants)

127.   Plaintiffs hereby incorporate by reference and re-alleges paragraphs 1-79 as though fully set forth herein.

128.   At all times relevant herein, Defendants were required to pay their employees all wages owed in a timely fashion during and at the end of their employment, pursuant to Cal. *Lab. Code* §§ 201–203.

129.   As a pattern and practice, Defendants regularly failed to pay Plaintiffs their final wages pursuant to Cal. *Lab. Code* §§ 201–203, and accordingly owe waiting time penalties pursuant to Cal. *Lab. Code* § 203.

130.   The conduct of Defendants and their agents and managerial employees as described herein was willful, and in violation of the rights of Plaintiffs.

131.   Plaintiffs are informed and believe, and on that basis allege, that

Defendants' willful failure to pay wages due and owed to them upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due. Therefore, Plaintiffs are entitled to compensation pursuant to Cal. *Lab. Code* § 203.

## EIGHTH CAUSE OF ACTION

### FAILURE TO INDEMNIFY BUSINESS EXPENSES IN VIOLATION OF
### CAL. *LAB. CODE* § 2802
### (Against All Defendants)

132.   Plaintiffs hereby incorporate by reference and re-alleges paragraphs 1-79 as though fully set forth herein.

133.   Cal. *Lab. Code* § 2802 requires employers, including Defendants, to indemnify employees for all necessary expenditures incurred by the employee in performing their job.

134.   As alleged herein, Defendants required Plaintiffs, as a condition of their employment, pay a daily "house fee" and/or "stage fee" in order to fulfill Plaintiffs' job duties.

135.   As alleged herein, Defendants required Plaintiffs, as a condition of their employment, pay "late fees" and "leave early fees" and any balances from previous shifts in order to fulfill Plaintiffs' job duties.

136.   Such expenditures by Plaintiffs are incurred in direct consequence of the discharge of Plaintiffs' job duties.

137.   As a direct and proximate result of Defendants' failure to reimburse Plaintiffs for these necessary expenditures, Plaintiffs have been injured in an amount to be proved.

138.   Plaintiffs are, therefore, entitled to recover reimbursement for these necessary expenditures, and also to recover costs, interest, and attorneys' fees as provided by California law.

///

### NINTH CAUSE OF ACTION

**COMPULSION AND COERCION TO PATRONIZE EMPLOYER AND/OR OTHER**

**PERSONS IN VIOLATION OF CAL. *LAB. CODE* §450**

**(Against All Defendants)**

139.   Plaintiffs hereby incorporate by reference and re-alleges paragraphs 1-79 as though fully set forth herein.

140.   Cal. *Lab. Code* § 450 provides that no employer "may compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of anything of value."

141.   As alleged herein, Defendants required Plaintiffs to purchase various fees such as the "house fee," the "late fee," and the "leave early fee" from Defendants and/or other specific persons.

142.   As a direct and proximate result of Defendants' requirement that Plaintiffs purchase anything of value, including the "house fee," "stage fee," the "late fee," and the "leave early fee" from Defendants and/or other specific persons, Plaintiffs have been injured in an amount to be proved.

143.   By requiring Plaintiffs to purchase said fees to do their job, Defendants compelled and coerced Plaintiffs to patronize Defendants' business.

144.   Plaintiffs are, therefore, entitled to recover damages, and also to recover costs, interest, and attorney's fees as provided by California law.

### TENTH CAUSE OF ACTION

**TIP MISAPPROPRIATION IN VIOLATION OF CAL. *LAB. CODE* §§ 350, *ET SEQ.***

**(Against All Defendants)**

145.   Plaintiffs hereby incorporate by reference and re-alleges paragraphs 1-79 as though fully set forth herein.

146.   Cal. *Lab. Code* § 351 makes it illegal for an employer to collect tips paid or left for the employee and mandates that such tips are the employees' property. Moreover, Cal. *Lab. Code* § 350(2) provides as follows: Gratuity

includes any tip, gratuity, money or part thereof that has been paid or given to or left for an employee by a patron of a business over and above the actual amount due the business for service rendered or for goods, food, drink or articles or served to the patron. **Any amounts paid directly by a patron to a dancer employed by an employer subject to Industrial Welfare Commission Order No. 5 or 10 shall be deemed a gratuity**.

147.   Plaintiffs are entitled to the amounts paid by the patron at Plan B that were taken/withheld by Defendants.

148.   Plaintiffs are, therefore, entitled to recover damages, and also to recover costs, interest, and attorneys' fees as provided by California law.

## ELEVENTH CAUSE OF ACTION

### UNFAIR COMPETITION IN VIOLATION OF
### CAL. *BUS. & PROF. CODE* §§ 17200, *ET SEQ.*
### (Against All Defendants)

149.   Plaintiffs hereby incorporate by reference and re-alleges paragraphs 1-79 as though fully set forth herein.

150.   Cal. *Bus. & Prof. Code* § 17200 defines "unfair competition" to include any unlawful business practice.

151.   Cal. *Bus. & Prof. Code* §17204 allows a person who has lost money or property as a result of unfair competition to bring an action for restitution of money or property acquired from him or her by means of unfair competition.

152.   The FLSA prohibits employers to divert any part of an employee's wages and overtime wages, including tips and gratuity, to itself.

153.   In violation of these requirements, as set forth above, Defendants violated 29 U.S.C. § 203 by forcing Plaintiffs to participate in an invalid tip-pool with employees who typically do not receive tips. Additionally, Defendants forced Plaintiffs to use portions of their tip wages to pay Defendant managers as well as "house fees" and other fees and fines.

154.   In violation of these requirements, as set forth above, Defendants violated 29 U.S.C. § 206 and 29 U.S.C. § 207 by failing to pay Plaintiffs minimum wages and overtime wages, charged them illegal house fees, took payments to them from clients and forced them to subsidize the other employees.

155.   As a result of Defendants' above-alleged unlawful business practices, Plaintiffs have lost monies and property by means of unfair competition.

156.   In violation of these requirements, as set forth above, Defendants compelled Plaintiffs to patronize Plan B.

157.   In violation of these requirements, as set forth above, Defendants failed to pay Plaintiffs minimum wages for the hours that they worked.

158.   In violation of these requirements, as set forth above, Defendants failed to indemnify business expenses to Plaintiffs.

159.   As a result of Defendants' above-alleged unlawful business practices, Plaintiffs have lost monies and property by means of unfair competition.

160.   Pursuant to Cal. *Bus. & Prof. Code* § 17204, Plaintiffs seek an order of restitution for all monies and property that Defendants have acquired from them by means of unfair competition from the forced tip pooling.

161.   Plaintiffs are seeking minimum wages, overtime wages, forced tips, house fees, and stolen tips and other restitutionary relief under this equitable cause of action for the four years prior to filing this lawsuit.

///
///
///
///
///
///
///
///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request this Court the following relief:

1. For compensatory damages according to proof of at least $100,000 for each Plaintiffs;
2. For special damages according to proof;
3. For restitution of unpaid monies;
4. For attorneys' fees;
5. For costs of suit incurred herein;
6. For statutory penalties;
7. For civil penalties;
8. For pre-judgment interest;
9. For post-judgment interest;
10. For general damages in an amount to be proven; and
11. For such other and further relief as the tribunal may deem just and proper.

Dated: March 16, 2023

**CARPENTER & ZUCKERMAN**

*/s/ John P. Kristensen*
John P. Kristensen
Justice D. Turner

**Attorneys for Plaintiffs**

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all such triable claims.

Dated: March 16, 2023

**CARPENTER & ZUCKERMAN**

*/s/ John P. Kristensen*

John P. Kristensen
Justice D. Turner

***Attorneys for Plaintiffs***